Miscellaneous Docket No. _____

IN THE

# United States Court of Appeals

## FOR THE FEDERAL CIRCUIT

◆◆

IN RE TIME WARNER CABLE INC. and TIME WARNER CABLE ENTERPRISES LLC,

*Petitioners.*

ON PETITION FOR A WRIT OF MANDAMUS TO THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS (MARSHALL DIVISION)
IN CIVIL ACTION NO. 2:13-CV-1079
(HON. ROY S. PAYNE)

## PETITION FOR A WRIT OF MANDAMUS

JOHN M. DESMARAIS
MICHAEL P. STADNICK
JONAS R. MCDAVIT
AMEET A. MODI
DESMARAIS LLP
230 Park Avenue
New York, New York 10169
(212) 351-3400

*Attorneys for Petitioners*
*Time Warner Cable Inc. and*
*Time Warner Cable Enterprises LLC*

# CERTIFICATE OF INTEREST

Pursuant to Circuit Rules 21(a)(2) and 47.4(a)(1), counsel for Petitioners certifies the following:

1.     The full names of every party represented by me are Time Warner Cable Inc. and Time Warner Cable Enterprises LLC.

2.     There are no other real parties in interest represented by me.

3.     Time Warner Cable Inc. is a publicly held company.  No parent corporation or publicly held corporation owns 10% or more of Time Warner Cable Inc.'s stock.  Time Warner Cable Enterprises LLC is owned directly or indirectly by Time Warner Cable Inc., which is a publicly held company.

4.     The names of all law firms and attorneys that appeared for Time Warner Cable Inc. and Time Warner Cable Enterprises LLC in the district court or are expected to appear in this court are:

DESMARAIS LLP:  John M. Desmarais, Paul A. Bondor, Michael P. Stadnick, Jonas R. McDavit, Tamir Packin, Ameet A. Modi, Karim Z. Oussayef, Edward Terchunian

KAYE SCHOLER LLP:  David S. Benyacar, Paul I. Margulies

POTTER MINTON P.C.:  Michael E. Jones, Allen F. Gardner

## CONFIDENTIALITY STATEMENT

The body of this petition does not contain any confidential information.

Time Warner Cable filed docket item 51 (A000721-872) under seal in the district court because it contains confidential Time Warner Cable business information.

Constellation LLC filed docket item 102 (A001109-1129) under seal in the district court because Constellation represented that it contains confidential business information.  Pursuant to local practice in the Eastern District of Texas, the parties did not file separate public versions of those exhibits.  Thus, while much of the information contained in those exhibits is not confidential, the exhibits themselves are confidential in their entirety because of how they were filed in the district court.

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ................................................................. i

TABLE OF CONTENTS ...................................................................... iii

TABLE OF AUTHORITIES .................................................................. iv

INTRODUCTION ..................................................................................1

RELIEF SOUGHT .................................................................................2

ISSUE PRESENTED ..............................................................................3

STATEMENT OF FACTS ......................................................................3

    I.    Procedural Background ................................................................3

    II.   The Parties Are Delaware Companies With Substantial Resources Near That District And No Significant Ties To East Texas. .......................5

REASONS WHY THE WRIT SHOULD ISSUE ...................................7

    I.    This Court Should Grant Mandamus To Require The District Court To Rule On Time Warner Cable's Motion To Transfer. ...........................7

        A.    Mandamus Is The Appropriate Remedy For A District Court's Undue Delay. ...........................................................8

        B.    The District Court Has Unduly Delayed Ruling On Transfer While Proceeding With Merits-Related Rulings...........................12

    II.   Mandamus Is Especially Warranted Here Because This Court's Precedents Require Transfer. .................................................14

CONCLUSION ....................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*FutureVision.com, LLC v. Time Warner Cable Inc., et al.*,
   Case No. 6:12-cv-386-LED, 2013 WL 5496810 (E.D. Tex. Apr. 22,
   2013) ...............................................................................................16

*Google Inc. v. Rockstar Consortium U.S. LP*,
   No. 4:13-cv-5933-CW, 2014 WL 1571807 (N.D. Cal. Apr. 17, 2014) .............15

*Hassine v. Zimmerman*,
   160 F.3d 941 (3d Cir. 1998) ...............................................................8

*Hirsch v. Burke*,
   40 F.3d 900 (7th Cir. 1994) ...............................................................9

*In re Apple Inc.*,
   456 F. App'x 907 (Fed. Cir. 2012) .......................................................9

*In re EMC Corp.*,
   501 F. App'x 973 (Fed. Cir. 2013) ............................................... 10, 13

*In re Fusion-IO, Inc.*,
   489 F. App'x 465 (Fed. Cir. 2012) ......................................... 2, 10, 14

*In re Genentech*,
   566 F.3d 1338 (Fed. Cir. 2009) .................................................. 16, 17

*In re Google Inc.*,
   Misc. Docket No. 2014-147...................................................................6

*In re Hijazi*,
   589 F.3d 401 (7th Cir. 2009) ...............................................................9

*In re Hoffmann-La Roche Inc.*,
   587 F.3d 1333 (Fed. Cir. 2009) .........................................................15

*In re Horseshoe Entm't*,
   337 F.3d 429 (5th Cir. 2003) ....................................................... 10, 14

*In re Microsoft Corp.*,
   630 F.3d 1361 (Fed. Cir. 2011) .........................................................15

*In re Nintendo Co., Ltd.*,
   544 F. App'x 934 (Fed. Cir. 2013) ............................................... 10, 12

*In re Nintendo Co., Ltd.*,
   589 F.3d 1194 (Fed. Cir. 2009) ........................................................14

*In re Nintendo of Am., Inc.*,
   756 F.3d 1363 (Fed. Cir. 2014) ........................................................17

*In re Pub. Serv. Co. of N.H.*,
   963 F.2d 469 (1st Cir. 1992) ...............................................................9

*In re Scott*,
   163 F.3d 282 (5th Cir. 1998) ...............................................................9

*In re TS Tech USA Corp.*,
   551 F.3d 1315 (Fed. Cir. 2008) ...........................................8, 11, 14

*In re Volkswagen of Am., Inc.*,
   545 F.3d 304 (5th Cir. 2008) ........................................................8, 11

*In re VTech Commc'ns, Inc.*,
   Misc. No. 909, 2010 WL 46332 (Fed. Cir. 2010) ..............2, 9, 11, 12

*In re Zimmer Holdings, Inc.*,
   609 F.3d 1378 (Fed. Cir. 2010) ........................................................16

*Johnson v. Rogers*,
   917 F.2d 1283 (10th Cir. 1990) ...........................................................9

*Knickerbocker Ins. Co. of Chicago v. Comstock*,
   83 U.S. 258 (1872) ..............................................................................8

*La Buy v. Howes Leather Co.*,
   352 U.S. 249 (1957) ..........................................................................18

*Madden v. Myers*,
   102 F.3d 74 (3d Cir. 1996) ...............................................................12

*McClellan v. Carland*,
   217 U.S. 268 (1910) ............................................................................9

*McDonnell Douglas Corp. v. Polin*,
   429 F.2d 30 (3d Cir. 1970) ......................................................9, 10, 11

*Miller v. Hambrick*,
   905 F.2d 259 (9th Cir. 1990) .............................................................12

*Roche v. Evaporated Milk Ass'n*,
   319 U.S. 21 (1943) ..............................................................................9

*Will v. Calvert Fire Ins. Co.*,
   437 U.S. 655 (1978) ............................................................................9

v

**Statutes**

28 U.S.C. § 1404 .......................................................................................... 10, 18

28 U.S.C. § 1407 .......................................................................................... 17, 18

## INTRODUCTION

This case presents a twist on a familiar problem. Like the long line of recent cases in which this Court has mandated transfer, this one has no meaningful connection to the Eastern District of Texas. Indeed, plaintiff Constellation Technologies LLC, a Delaware subsidiary of a Canadian corporation, registered to do business in Texas just days before filing suit. As a result, Time Warner Cable Inc. and Time Warner Cable Enterprises LLC (collectively "Time Warner Cable") moved to transfer the case to Delaware.

Instead of granting that motion, however, the district court has simply not ruled. Nor has the court responded to Time Warner Cable's request for oral argument on the transfer motion. Further, the court has not ruled on Time Warner Cable's corresponding motion to stay all proceedings pending resolution of the transfer motion. Yet at the same time, the court has moved forward with merits-related matters raised well after Time Warner Cable's transfer-related requests. Just three weeks ago, the court held a hearing and granted a motion by Constellation to compel further discovery. Claim construction proceedings are scheduled to begin in October.

Pressing ahead with such merits-related matters amounts to an effective denial of transfer because it requires Time Warner Cable to litigate the case in an inappropriate venue. And the lack of an actual ruling impairs this Court's jurisdiction to enforce its transfer jurisprudence because there is no ruling for the Court to review on mandamus. For those reasons, this Court has repeatedly

1

advised district courts to rule promptly on transfer motions before "proceeding to any motion on the merits of the action." *In re Fusion-IO, Inc.*, 489 F. App'x 465, 466 (Fed. Cir. 2012) (non-precedential). The purpose of a transfer motion is to ensure that the parties litigate their dispute in an appropriate forum. Failing to rule on a transfer motion wholly undercuts the purpose and benefits of transfer.

It is well established that, when a district court fails to issue a timely ruling, a court of appeals may grant mandamus to require the district court to rule. A remedy is needed for the delay, and mandamus provides it. Moreover, delay in ruling might even predetermine the outcome of a transfer motion: the Eastern District of Texas has relied on the familiarity it acquired with a case—while a transfer motion was pending—as a reason to deny transfer. *See In re VTech Commc'ns, Inc.*, Misc. No. 909, 2010 WL 46332, at *1 (Fed. Cir. 2010) (non-precedential). Justice delayed in this circumstance is justice denied.

This Court should not permit district courts to pocket veto transfer motions. Otherwise, this Court's mandamus jurisprudence, and several years of its precedents on transfer, could be nullified.

## RELIEF SOUGHT

Time Warner Cable respectfully requests a writ of mandamus directing the district court to rule on its transfer motion. To effectuate its grant of mandamus, this Court should also stay all proceedings in this action until such a ruling.

## ISSUE PRESENTED

Whether this Court should direct the district court to rule on Time Warner Cable's transfer motion, and stay all proceedings in the meantime, to prevent prejudice to Time Warner Cable and enable this Court to exercise its jurisdiction to review that ruling before protracted litigation on the merits of the case ensues.

## STATEMENT OF FACTS

### I.    Procedural Background

Constellation filed this patent infringement action on December 11, 2013, alleging that Time Warner Cable infringes six United States patents.  A1, A1135. Time Warner Cable is one of the country's largest providers of telecommunications and cable television services.  Constellation accuses various Time Warner Cable services and technologies of infringement, including switched digital video, voice-over-IP, multi-protocol label switching, Ethernet passive optical network, and digital video recorder services and technologies.  A1138, A1142-43, A1147.

Time Warner Cable does not manufacture the equipment that enables those allegedly infringing services.  Instead, it purchases that equipment primarily from Cisco Systems, Inc. and ARRIS Group, Inc.  A37.  In January 2014, to protect their customers against those allegations, Cisco (against whom Constellation's sister entity already brought patent infringement claims in Delaware) and ARRIS (which maintains a key facility just 37 miles from Delaware) filed declaratory judgment suits in the District of Delaware concerning a number of patents, including all of the patents asserted in this suit.  A1275, A1283, A1696-97.

3

On February 11, 2014, Time Warner Cable moved to transfer venue of this case to the District of Delaware.  A15.  All briefing, including a sur-reply by Constellation, was completed on April 18, 2014.  A873.

On April 7, 2014, almost two months after Time Warner Cable filed its transfer motion, the district court held a status conference.  A7.  During that conference, the court set a claim construction hearing for March 3, 2015, scheduled trial to begin on October 13, 2015, and ordered the parties to submit a joint proposal for remaining deadlines, including discovery and summary judgment, within two weeks.  A7 (April 7, 2014).  In accordance with the district court's local rules, the parties' proposed schedule required the parties to substantially complete their document productions by January 20, 2015.  A901.  The schedule also called for claim construction activities to begin on October 28, 2014, with the parties identifying and exchanging disputed claim terms on that date, and opening briefs to be filed on January 20, 2015.  A901-02.  On April 22, 2014, with substantial discovery obligations and claim-construction proceedings approaching, Time Warner Cable requested a hearing on its transfer motion.  A905.

On May 16, 2014, having heard nothing on its requests for transfer, or even on its request for a hearing, Time Warner Cable moved for a limited stay until the district court issues its transfer ruling.  A937.  In its motion, Time Warner Cable reminded the district court that its transfer motion had been fully briefed, that absent a stay the parties and the district court would be required to spend considerable resources on merits-based issues in an inconvenient forum, and that a stay would permit the court to address the venue issue without causing any

4

prejudice to Constellation.  A941-48.  The parties completed briefing on the motion to stay on June 23, 2014.  A1043.  More than two months later, that motion also remains pending.

In the meantime, the district court has proceeded with other aspects of the case.  On June 23, 2014, the court entered a protective order and a discovery order governing the disclosure and use of infringement and invalidity contentions, interrogatories, depositions, and expert testimony.  A1076-97, A1098-1108.  On July 18, 2014, Constellation filed a motion to compel further discovery.  A1109, A1129.  Just one week later, the district court scheduled a hearing for August 12, 2014, for that and some other pending motions—but not for Time Warner Cable's transfer and stay motions.  A13 (June 25, 2014).  The hearing lasted more than two hours.  A1130.  The very next day, the court issued an order requiring Time Warner Cable to, among other things, produce a witness for deposition within 30 days and supplement interrogatory responses concerning the equipment Time Warner Cable uses to provide the allegedly-infringing services.  A1132-34.

## II.    The Parties Are Delaware Companies With Substantial Resources Near That District And No Significant Ties To East Texas.

Although the absence of a ruling from the district court prevents the merits of Time Warner Cable's transfer motion from coming squarely before this Court at this time, the facts underlying that motion underscore the need for a timely ruling. Time Warner Cable is a Delaware company headquartered in New York City, approximately 100 miles from Delaware.  A22, A36.  Time Warner Cable

5

maintains most of the technical documentation and personnel relevant to Constellation's claims at its headquarters, at facilities in the Washington, D.C. suburb of Herndon, Virginia, which is also approximately 100 miles from the District of Delaware, and to a more limited extent in Broomfield, Colorado, which is relatively neutral to the two venues.  A22, A37.   Although Time Warner Cable enlists subscribers throughout the country, none of Time Warner Cable's relevant witnesses or documents is located in Texas.  A22, A37.

Constellation itself is a Delaware company with no meaningful ties to Texas. A23.  Constellation is a wholly-owned subsidiary of Rockstar Consortium US LP, a company headquartered in Ottawa, Canada that allegedly took ownership of patents developed by Nortel Networks, once Canada's largest telecommunications company prior to bankruptcy.  A397.  Upon creating Constellation in November 2013, Rockstar transferred ownership of the patents-in-suit to that shell entity. A109.  Constellation then registered to do business in Texas as a "patent licensing" entity—nine days before it brought suit.  A112.  Its sole employee, John Garland, resides and works near New York City.  A116.  Constellation's alleged acquisition of patents from Nortel (along with Rockstar's practice of manufacturing a presence in Texas through shell entities such as Constellation) is described more fully in several other, related petitions for writs of mandamus pending before this Court. *See, e.g., In re Google Inc.*, Misc. Docket No. 2014-147 (Aug. 14, 2014) (Petition For Writ of Mandamus) at 6-8.

Time Warner Cable's motion sought transfer because of the parties' connections to and near Delaware, as well as their absence of meaningful

6

connections to Texas; the presence of the majority of the named inventors and other non-party witnesses in eastern Canada, significantly closer to Delaware than to Texas; and the judicial economy that would result from likely consolidation with the related manufacturer suits pending in Delaware.  A15-34.  In response, Constellation relied on now-defunct Texas connections of Nortel,[1] even though Rockstar and Constellation have made clear in court filings that they are "not Nortel[,] [that they] never assumed Nortel's identity or its contacts," and that they "simply obtained Nortel's patent portfolio during Nortel's chapter 11 bankruptcy." A406, A1727, A1740.

## REASONS WHY THE WRIT SHOULD ISSUE

I.    **This Court Should Grant Mandamus To Require The District Court To Rule On Time Warner Cable's Motion To Transfer.**

By this point in the case, one of two things should have happened.  Either the district court should have granted Time Warner Cable's transfer motion, or this Court should have had the opportunity to review a denial of that motion and to direct the district court to transfer this case to Delaware.  Time Warner Cable was understandably reluctant to file this petition.  But the district court has continued to take up and resolve merits-related matters—raised well after Time Warner Cable's transfer request—without even scheduling a hearing on Time Warner Cable's motion to transfer or staying proceedings until the court rules on the transfer

---

[1] Moreover, the now-closed Nortel Texas facility that Constellation claims a connection to was located in the Northern District of Texas, not the Eastern District of Texas. A422.

7

motion.  As a result, this case now presents the following question:  can a district court simply decline to rule on a transfer motion, and thereby prejudice the parties and evade this Court's review?  Because the only conceivable answer to that question is no, this Court should issue a writ of mandamus.

## A.    Mandamus Is The Appropriate Remedy For A District Court's Undue Delay.

"The writ of mandamus is available in extraordinary situations to correct a clear abuse of discretion or usurpation of judicial power."  *In re TS Tech USA Corp.*, 551 F.3d 1315, 1318 (Fed. Cir. 2008).  A party must show that its right to issuance of the writ is "clear and indisputable" and that the party has "no other adequate means to attain the relief he desires—a condition designed to ensure that the writ will not be used as a substitute for the regular appeals process."  *Id*. at 1319; *see also In re Volkswagen of Am., Inc.*, 545 F.3d 304, 311 (5th Cir. 2008) ("*Volkswagen II*").

It is well settled that "delay by the district court [can] become so excessive as to warrant the issuance of a writ of mandamus."  *Hassine v. Zimmerman*, 160 F.3d 941, 954 (3d Cir. 1998).  As the Supreme Court has emphasized, "[r]epeated decisions of this court have established . . . that the writ will lie in a proper case to direct a subordinate Federal court to decide a pending cause."  *Knickerbocker Ins. Co. of Chicago v. Comstock*, 83 U.S. 258, 270 (1872) (citing cases).

This is a classic circumstance for mandamus because the absence of an actual ruling can effectively decide the issue against the moving party while escaping appellate review.  As one of the principal purposes of the writ of

mandamus is to protect the Court's jurisdiction, "a court of appeals has the power to direct a district court to proceed to judgment in a pending case 'when it is its duty to do so.'" *Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 662 (1978) (citing *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 26 (1943)). "Otherwise the appellate jurisdiction could be defeated and the purpose of the statute authorizing the writ thwarted by unauthorized action of the district court obstructing the appeal." *Id.* (quoting *Roche*, 319 U.S. 25); *see also McClellan v. Carland*, 217 U.S. 268, 280 (1910).

Accordingly, the courts of appeals have frequently issued mandamus to require district courts to rule on time-sensitive matters of all stripes, including transfer. *See, e.g.*, *McDonnell Douglas Corp. v. Polin*, 429 F.2d 30, 30 (3d Cir. 1970) (per curiam) (compelling ruling on transfer motion before reaching merits of suit); *In re Hijazi*, 589 F.3d 401, 414 (7th Cir. 2009) (compelling ruling on motion to dismiss indictment before appearance and arraignment); *In re Scott*, 163 F.3d 282, 284-85 (5th Cir. 1998) (compelling district court to rule on habeas petition); *Johnson v. Rogers*, 917 F.2d 1283, 1285 (10th Cir. 1990) (same). Indeed, this and other courts have rebuked litigants for *not* seeking mandamus to end unreasonable delay by a district court. *See In re Apple Inc.*, 456 F. App'x 907, 908 (Fed. Cir. 2012) (non-precedential) ("[petitioner] failed to employ any strategy to pressure the district court to act, such as seeking mandamus to direct the district court to rule on the motion"); *In re VTech*, 2010 WL 46332, at *2; *Hirsch v. Burke*, 40 F.3d 900, 905 (7th Cir. 1994); *In re Pub. Serv. Co. of N.H.*, 963 F.2d 469, 472 (1st Cir. 1992).

9

The nature of the relief sought in a transfer motion makes it especially important for district courts to rule in a timely manner.  The purpose of a motion to transfer venue is to ensure that cases are litigated in an appropriate forum, in part for the convenience of the parties and witnesses.  *See, e.g.*, 28 U.S.C. § 1404.  To serve that purpose, a transfer motion must be adjudicated at a relatively early stage—*before* the parties are forced to litigate the merits of their dispute in an inappropriate and inconvenient forum.  *See McDonnell Douglas*, 429 F.2d at 30.  Accordingly, this Court has repeatedly directed district courts to rule on transfer motions before "proceeding to any motion on the merits of the action."  *In re Fusion-IO, Inc.*, 489 F. App'x at 466; *see also In re EMC Corp.*, 501 F. App'x 973, 975-76 (Fed. Cir. 2013) (recognizing "the importance of addressing motions to transfer at the outset of litigation"); *In re Nintendo Co., Ltd.*, 544 F. App'x 934, 942-43 (Fed. Cir. 2013) ("*Nintendo II*") (directing district court to conduct further proceedings on plaintiff's motion to sever and transfer before reaching the merits).  So, too, have other courts of appeals.  *See, e.g., In re Horseshoe Entm't*, 337 F.3d 429, 433 (5th Cir. 2003) (explaining that "disposition of [defendant's transfer] motion should have taken a top priority in the handling of this case"); *McDonnell Douglas*, 429 F.2d at 30–31.

For that reason, at least one other court of appeals has directed a district court to rule on a pending motion to transfer.  *McDonnell Douglas*, 429 F.2d at 30-31.  In that case, the district court had made clear that it would not rule on the transfer motion until after all discovery related to the merits of the case was completed.  *Id.* at 30.  The Third Circuit did not hesitate to direct otherwise.  It

10

explained that "[t]o undertake a consideration of the merits of the action is to assume, even temporarily, that there will be no transfer before the issue is decided." *Id.* Moreover, "[j]udicial economy requires that another district court should not burden itself with the merits of the action until it is decided that a transfer should be effected," and "the court which ultimately decides the merits of the action should also decide the various questions which arise during the pendency of the suit instead of considering it in two courts." *Id.* The court of appeals therefore directed the district court to decide the motion for transfer, and specified that "only if the court should deny the motion to transfer should discovery be permitted to go forward." *Id.* at 31.

Indeed, the need for a timely ruling, before a dispute is litigated in an inappropriate forum, is the very reason this Court reviews transfer motions on mandamus. As this Court and the Fifth Circuit have explained, denial of transfer must be reviewed on mandamus or not at all. *See TS Tech*, 551 F.3d at 1322 (citing *Volkswagen II*, 545 F.3d at 318-19). Once the district court has entered final judgment, it is too late for appellate review because the damage has already been done.

Even before final judgment, a court's delay in ruling on transfer while pressing forward with the merits may predetermine the outcome. In one case, this Court denied relief because, by the time the defendant sought mandamus, "the trial court's familiarity with the case and the completion of claim construction" weighed against transfer and mandamus. *In re VTech*, 2010 WL 46332, at *2. While the defendant argued that a district court's delay in ruling on a transfer

11

motion should not constitute sufficient grounds for denying the motion, this Court determined that "it was incumbent upon [defendant] to actively and promptly pursue its motion to transfer venue before the district court invested significant time and attention on discovery and completing claim construction." *Id.*

Time Warner Cable has promptly and repeatedly sought relief at every turn. In the absence of a timely ruling—as is the case here—mandamus is the appropriate remedy because a district court's failure to rule is itself an abuse of discretion. *See, e.g., Madden v. Myers*, 102 F.3d 74, 79 (3d Cir. 1996) ("[U]ndue delay is tantamount to a failure to exercise jurisdiction."), *superseded on other grounds by* 3d Cir. L.A.R. 24.1(c) (1997); *Nintendo II*, 544 F. App'x at 939-40 ("Failure to exercise discretion is not exercising discretion; it is making a legal mistake."); *Miller v. Hambrick*, 905 F.2d 259, 262 (9th Cir. 1990) ("A district court's failure to exercise discretion constitutes an abuse of discretion.").

### B.    The District Court Has Unduly Delayed Ruling On Transfer While Proceeding With Merits-Related Rulings.

Although there is no specific, set time in which a district court must rule on a transfer motion, there is no doubt that here the district court has pressed ahead with merits-related hearings and rulings while not deciding the transfer motion. Mandamus is not only an *appropriate* remedy, it is the *only* remedy left to petitioners. Time Warner Cable filed its transfer motion nearly seven months ago, in February 2014, and the motion has been fully briefed since April. A15, A873. With substantive discovery deadlines looming, Time Warner Cable asked for a hearing in April. A905. A month later, with discovery obligations mounting and

12

claim-construction deadlines approaching, Time Warner Cable moved to stay all proceedings until the court ruled on the transfer motion, so that the parties and the court could avoid litigating in a plainly inconvenient forum. A937. The district court has remained silent on all three requests.

Undoubtedly the district court has a full docket, but that fact cannot account for the prejudicial inaction in this case. The court could have alleviated any docket pressure by granting the requested stay—indeed, that was the point of the stay motion. On the other hand, the court has acted quickly on subsequently-filed motions and requests for relief on merits-related issues. Four months after Time Warner Cable moved for transfer and one month after it moved for a stay, the district court entered docket control and protective orders—in response to competing proposals the parties had submitted just weeks earlier. A10 (Dkt. No. 90), A11 (Dkt. No. 97). And when Constellation filed a motion in July 2014 seeking further discovery from Time Warner Cable, the district court promptly ordered the parties to fly to Marshall, Texas on August 12, 2014—less than three weeks later—for argument. A12 (Dkt. No. 102, July 18, 2014), A13 (July 25, 2014). The day after that hearing, the district court issued an order outlining its rulings and compelling Time Warner Cable to provide further discovery on merits-related issues. A1132-34. Addressing merits-based motions and issuing merits-based rulings before addressing Time Warner Cable's transfer motion is precisely what this Court has directed against. *EMC Corp.*, 501 F. App'x at 975 (quoting

13

*Horseshoe Entm't*, 337 F.3d at 433); *Fusion-IO*, 489 F. App'x at 466; *see also* pp. 9-12, *supra*.[2]

## II.    Mandamus Is Especially Warranted Here Because This Court's Precedents Require Transfer.

Mandamus is particularly warranted because this case has no meaningful connection to East Texas, but substantial connections to the District of Delaware. As this Court has explained, "in a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the [plaintiff's chosen] venue, the trial court should grant a motion to transfer. *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009).[3]

Rockstar and Constellation manufactured its connection to the Eastern District of Texas in anticipation of litigation and for the purpose of establishing venue and defeating transfer. One court has described Rockstar's elaborate setup of shell entities allegedly based in Texas, including Constellation, as a "sham."

---

[2] Less than a month after this Court's order in *Fusion-IO*, the district court stayed all deadlines and scheduled a hearing on the transfer motion. A1747, A1778 (Dkt. Nos. 292, 293).

[3] In deciding the propriety of transfer, the Fifth Circuit analyzes public and private factors relating to the convenience of parties and witnesses, as well as the interests of particular venues in hearing the case. *See TS Tech*, 551 F.3d at 1319. The private factors are the relative ease of access to sources of proof, the availability of compulsory process to secure the attendance of witnesses, the cost of attendance for willing witnesses, and all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Id*. The public factors include administrative difficulties flowing from court congestion, the local interest in having localized interests decided at home, the familiarity of the forum with the law that will govern the case, and the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Id*.

*Google Inc. v. Rockstar Consortium U.S. LP*, No. 4:13-cv-5933-CW, 2014 WL
1571807, at *4 (N.D. Cal. Apr. 17, 2014).  Indeed, Constellation (like Time
Warner Cable) is incorporated in *Delaware*; its parent company, Rockstar, is based
in Canada; and its only employee lives in New York.  A23, A109, A116, A137.
Although Constellation claims to do business in Texas, its only "business" is
litigation—indeed, it registered itself in Texas as a "patent licensing" entity just
days before filing suit against Time Warner Cable.  A112.  Other mandamus
petitions currently pending before this Court further describe Rockstar's venue-
manipulation tactics.  *See* p. 6, *supra*.

This Court has repeatedly rejected such attempts "to manipulate the
propriety of venue."  *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1337 (Fed.
Cir. 2009).  "[C]onnections to a [plaintiff's] preferred forum made in anticipation
of litigation and for the likely purpose of making that forum appear convenient"
cannot defeat transfer.  *In re Microsoft Corp.*, 630 F.3d 1361, 1364 (Fed. Cir.
2011).

The simple fact is that the significant majority of witnesses and evidence in
this case are located close to Delaware and far from East Texas.  The substantial
majority of Time Warner Cable's relevant documents are located at its corporate
headquarters in New York City and engineering campus in Herndon, Virginia—
both approximately 100 miles from the District of Delaware but more than a
thousand miles from Marshall, Texas.  A22, A37, A99-107.  And for those very
reasons, upon consideration of another recent motion to transfer involving Time
Warner Cable, the Eastern District of Texas transferred the case to the District of

15

Delaware.  *See FutureVision.com, LLC v. Time Warner Cable Inc., et al*., Case
No. 6:12-cv-386-LED, 2013 WL 5496810 (E.D. Tex. Apr. 22, 2013).

By contrast, Constellation is left to argue that it maintains possession of
"various patent files," including internal patent prosecution histories, in Texas.
A413.  As noted, Constellation's Texas connections deserve no weight because
they are a contrived "artifact of litigation."  *In re Zimmer Holdings, Inc.*, 609 F.3d
1378, 1381 (Fed. Cir. 2010).  Otherwise, a party could always defeat transfer
simply by moving its litigation-related documents to Texas.  *See id.*  In any event,
the location of six patents' prosecution histories does not remotely outweigh the
clear inconvenience to Time Warner Cable of transporting thousands of technical
documents to an inconvenient venue.  *See In re Genentech*, 566 F.3d 1338, 1345-
46 (Fed. Cir. 2009) (holding that location of defendant's documents weighs in
favor of transfer).

The cost of attendance for willing witnesses strongly favors transfer to
Delaware.  Most of the nearly two-dozen Time Warner Cable engineers and
employees with information potentially relevant to Constellation's infringement
allegations reside in New York City or Herndon, Virginia, a short train ride to
Delaware but almost five hours by flight to Marshall, Texas.  A31. A376-384.
Constellation's only employee works in New Jersey, 100 miles from Delaware.
A116.  And the majority of the named inventors reside in Toronto or Ottawa, each
a short flight from Delaware that takes half as long as travel to Marshall, Texas.
A173, A225-A246.

The availability of compulsory process also supports transfer to Delaware. As discussed above, ARRIS is a significant supplier of the equipment directly implicated by Constellation's infringement contentions against Time Warner Cable. ARRIS maintains the facility responsible for the design and manufacture of that equipment in Horsham, Pennsylvania, 37 miles from the District of Delaware and well within the trial subpoena power of that court. A367-371. The Eastern District of Texas lacks such power. *See Genentech*, 566 F.3d at 1345.

For those reasons, the convenience of the parties and witnesses clearly warrants transfer. Judicial economy further supports transfer because the related manufacturer suits brought by ARRIS and Cisco are pending in Delaware. A20-21. It would be more efficient, and consume fewer judicial resources, for the same court to consider all of the related cases. "When a patent owner files an infringement suit against a manufacturer's customer and the manufacturer then files an action of noninfringement or patent invalidity, the suit by the manufacturer generally takes precedence." *In re Nintendo of Am., Inc.*, 756 F.3d 1363, 1365 (Fed. Cir. 2014).

The Judicial Panel on Multidistrict Litigation ("MDL Panel") has recognized the "factual overlap" between this case and the manufacturer suits pending in Delaware. A1786. The Delaware cases involve all of the claims asserted in this case, as well as twenty additional patents. A1275, A1283, A1696-97. Because of those additional patents, the MDL Panel concluded that judicial efficiency did not support centralizing all of the cases for pre-trial purposes under 28 U.S.C. § 1407. A1786. Of course, the standard for transferring a case is different from

17

centralizing cases for pre-trial proceedings. *Compare* 28 U.S.C. §§ 1404 and 1407. And judicial efficiency favors the transfer of this suit because the issues in this case are subsumed within the more comprehensive Delaware suits. *See* A26-28, A722-23. In any event, the convenience of the parties and witnesses warrants transfer even without regard to the other suits pending in Delaware, as explained above. There is simply no good reason for this case to be in East Texas.

## CONCLUSION

The district court has and is addressing and resolving merits-related issues while effectively denying—through inaction—Time Warner Cable's motion to transfer and subsequent motion to stay. Mandamus is warranted, otherwise district courts could insulate themselves from this Court's review simply by declining to rule on transfer motions. "[E]ven 'a little cloud may bring a flood's downpour' if we approve the practice here indulged . . . ." *La Buy v. Howes Leather Co.*, 352 U.S. 249, 258 (1957). This Court should accordingly grant a writ of mandamus directing the district court to rule on Time Warner Cable's motion to transfer. To effectuate that grant, this Court should also stay all proceedings until the district court issues that ruling.

Dated:  September 4, 2014                    Respectfully submitted,

                                            */s/ John M. Desmarais*
                                            John M. Desmarais
                                            jdesmarais@desmaraisllp.com
                                            Michael P. Stadnick
                                            mstadnick@desmaraisllp.com
                                            Jonas R. McDavit
                                            jmcdavit@desmaraisllp.com
                                            Ameet A. Modi
                                            amodi@desmaraisllp.com
                                            DESMARAIS LLP
                                            230 Park Avenue
                                            New York, NY 10169
                                            Tel:  (212) 351-3400
                                            Fax:  (212) 351-3401

                                            *Attorneys for Petitioners Time Warner
                                            Cable Inc. and Time Warner Cable
                                            Enterprises LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on September 4, 2014, an original and four copies of this PETITION FOR A WRIT OF MANDAMUS were served, by Federal Express overnight delivery, on the Clerk of the United States Court of Appeals for the Federal Circuit.

I further certify that on September 4, 2014, two true and correct copies of the foregoing PETITION FOR A WRIT OF MANDAMUS were served via Federal Express:

## TRIAL COURT JUDGE:

The Honorable Roy Payne
United States District Court for the District of Delaware
Sam B. Hall, Jr. Federal Building and United States Courthouse
100 East Houston Street
Marshall, TX 75670
Tel:   (903) 935-2498

I further certify that on September 4, 2014, the following were served with a true and correct electronic version (via email) and two true and correct copies (via Federal Express) of the foregoing PETITION FOR A WRIT OF MANDAMUS:

**COUNSEL FOR CONSTELLATION TECHNOLOGIES LLC:**

Benjamin W. Hattenbach
Ellisen S. Turner
Jason Sheasby
Amit Agarwal
Hong Annita Zhong
James Milkey
Thomas C. Werner
Zachary T. Elsea
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA  90067-4276
Email:  bhattenbach@irell.com
Email:  eturner@irell.com
Email:  jsheasby@irell.com
Email:  aagarwal@irell.com
Email:  hzhong@irell.com
Email:  jmilkey@irell.com
Email:  twerner@irell.com
Email:  zelsea@irell.com

Harry Lee Gillam, Jr.
GILLAM & SMITH, LLP
303 S. Washington Ave.
Marshall, TX  75670
Email:  gil@gillamsmithlaw.com

Dated:  September 4, 2014          */s/ John M. Desmarais*
                                   John M. Desmarais